OPINION
{¶ 1} Defendant-appellant, Wanda Oney, appeals the July 1, 2002 judgment entry of the Common Pleas Court of Marion County, Ohio, granting summary judgment in favor of the plaintiff-appellee, Personal Service Insurance ("PSI").
 {¶ 2} The record reflects that Richard Scott Oney, the appellant's brother, was struck and killed by a vehicle driven by Richard Crump while riding his bicycle on November 1, 1994. At the time of her brother's death, the appellant was employed by Marion County, Ohio, as a food service supervisor at the county juvenile detention center. Also during this time, the Marion County Board of Commissioners ("the Board") was insured by PSI. In 1996, Richard Oney's estate settled with Crump, and the appellant received a distributive share of $1,000.00 as a wrongful death statutory beneficiary. The appellant also filed a claim for underinsured motorist coverage with Progressive Insurance Company, her automobile insurance provider, for her brother's death and received a settlement totaling $12,500.00 based on that claim. By letter, dated April 25, 2001, the appellant filed a claim with PSI, claiming underinsured motorist coverage for the death of Richard Oney. PSI denied the claim.
 {¶ 3} PSI filed an action for declaratory judgment against the appellant on November 19, 2001, requesting that the court declare that the appellant was not entitled to coverage under PSI's policy with the Marion County Board of Commissioners. Appellant filed an answer to this complaint and a counterclaim, alleging that PSI committed a breach of contract and acted in bad faith by denying her claim. Thereafter, both parties filed motions for summary judgment. On July 1, 2002, the trial court granted summary judgment in favor of PSI and denied Appellant's motion for partial summary judgment in her favor. This appeal followed, and the appellant now asserts two assignments of error.
 {¶ 4} "The trial court erred in failing to grant Wanda Bailey-Oney's January 30, 2002 Motion for Partial Summary Judgment declaring that she was an `insured' for purposes of $1,000,000 in uninsured/underinsured motorist coverage provided by operation of law."
 {¶ 5} "The trial court erred in its entry of July 1, 2002 granting summary judgment to Personal Service Insurance Company holding that Wanda Bailey-Oney was not entitled to coverage under the PSI policy issued to the Board of Commissioners of Marion County, and erred in dismissing her complaint."
 {¶ 6} These two assignments of error both relate to the issue of summary judgment and, as such, will be discussed together. The standard for review of a grant of summary judgment is one of de novo review.Lorain Nat'l Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 7} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 8} In the case sub judice, the parties do not dispute the relevant facts. Their controversy concerns whether the language of the policy provides coverage for the appellant given this set of facts. Thus, this Court need only determine whether either party is entitled to judgment as a matter of law. In addition, PSI does not dispute the appellant's status as a statutory beneficiary who may assert a claim of underinsured motorist coverage for the death of her brother under a policy by which she is an insured. It also does not dispute the fact that underinsured motorist coverage arose by operation of law in its policy with the Board because it failed to show proof that such coverage was offered by it and denied by the Board, as required by law at the time of the policy's issuance. Rather, PSI asserts that the appellant was not considered an insured under the Board's policy at the time of her brother's death. The appellant, relying upon Scott-Pontzer v. LibertyMut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, contends that she did qualify as an insured under her employer's policy of insurance with PSI.
 {¶ 9} The well-settled law of Ohio is that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Buckeye Union Ins. Co. v. Price (1974), 39 Ohio St.2d 95, syllabus. Therefore, absent any ambiguity, the words of a policy must be given their plain and ordinary meaning. Burris v. Grange Mut. Co.
(1989), 46 Ohio St.3d 84, 89.
 {¶ 10} In Scott-Pontzer, the commercial insurance coverage policy in dispute was issued to a corporation, Superior Dairy, Inc., by Liberty Mutual Fire Insurance Company. Scott-Pontzer, 85 Ohio St.3d at 661. The plaintiff, Kathryn Scott Pontzer, asserted a right to underinsured motorist coverage under this policy after her husband, an employee of Superior Dairy, died in an automobile accident. Id. The policy defined the insured as "you" and "if you are an individual, any family member." Id. at 663-663. However, Liberty Mutual argued that "you" referred only to the named insured, Superior Dairy, and not to Superior Dairy's employees. Id. at 664. The Ohio Supreme Court disagreed and found the term "you" to be ambiguous based on the fact that the insured was a corporation. Id. The Court determined that when a named insured is a corporation, an entity that "can act only by and through real live persons[,]" coverage is not limited solely to the corporate entity, but rather, is extended to the employees of the corporation. Id. The Court rationalized this determination by noting that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id. Therefore, having determined that the policy language was ambiguous, the court "construed [the language] most favorably to the insured" and found that the plaintiff's husband was an insured under his employer's policy. Id. at 665.
 {¶ 11} Appellant argues that the rationale of Scott-Pontzer
should, likewise, apply to PSI's policy with the Board because the Board is a political subdivision, which can only act by and through real live persons. In support of this contention, Appellant relies on an unreported decision from the Fifth District Court of Appeals of Ohio, which held that employees of the Board of County Commissioners of Tuscarawas County were insureds for purposes of uninsured motorist coverage when the named insured was listed as the "Tuscarawas County Commissioners." Hopkins v.Dyer, 2002-Ohio-1576, 2002 WL 501241. In Hopkins, Item 2 of the declarations page provided a space to indicate whether the named insured was an individual, partnership, corporation, joint venture, or other. Id. "Other" was marked with an "X" and the word "municipality" was written in. Id. Based on this information, the court determined that not only were the three individual commissioners covered by the policy but that the employees of the county were also covered. Id.
 {¶ 12} We find this case distinguishable from the facts inHopkins. The policy at issue in this case states the following: "WHO IS AN INSURED A. You. B. If you are an individual, any `family member'. C. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction. D. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'" The policy also states: "Throughout this policy the words `you' and `your' refer to the Named Insured shown in the Declarations." The Declarations page names only the Board of Commissioners of Marion County, Ohio, as an insured. However, unlike the policy at issue in Hopkins, PSI's policy with the Board in this case did not provide a space to indicate a classification for the named insured nor did the policy reflect that the named insured was a municipality. Moreover, any such classification would be inaccurate. A board of commissioners is comprised of three persons. See R.C. 305.01. To the contrary, a municipality is not a person. It is an entity determined by a certain geographical area. See R.C. 703.01-703.23.
 {¶ 13} The appellant also relies upon the Ohio Supreme Court's ruling in Headley v. Ohio Govt. Risk Management (1999), 86 Ohio St.3d 64.Headley was a memorandum opinion, which reversed the Fifth District Court of Appeals decision based upon the authority of Scott-Pontzer, but did not discuss the specifics of the case. Upon review of the appellate court's decision in Headley v. Ohio Govt. Risk Management (Mar. 20, 1998), Muskingum App. No. CT97-0017, 1998 WL 517691, we find the facts of that case distinguishable as well. In Headley, an employee of Brush Creek Township brought a claim for underinsured motorist coverage against his employer's insurer, Ohio Government Risk Management Plan ("OGRMP"). Id. The language in OGRMP's policy defining who was an insured was identical to the policy presently at issue. See id. However, the named insured in OGRMP's policy was identified as Brush Creek Township. Id.
 {¶ 14} A township is a political subdivision determined by geographical location rather than by real live persons, which is akin to a corporate entity in that it cannot act on its own but can only act by and through its employees. See R.C. 503.01-503.31. Once again, this is different from a Board of Commissioners. Although we recognize that a Board of Commissioners is a body politic, the Board is comprised of real live persons and is not a geographic entity. Thus, the persons who comprise the Board are capable of suffering bodily injury and/or death and are capable of both operating and occupying a motor vehicle unlike a township, municipality, or corporation.
 {¶ 15} The definition of who qualifies as an insured in the policy before this Court is unambiguous. Although the appellant contends that she, as an employee of Marion County, qualifies as an insured under the term "you," that term specifically references the named insured, which is the Board of Commissioners of Marion County, Ohio. Because the Board is comprised of real live persons who can occupy an automobile, suffer bodily injury or death, and/or operate a motor vehicle, the rationale ofScott-Pontzer is inapposite. Thus, the appellant, who was not a county commissioner at the time of her brother's death and does not conceivably fall under any other policy provision of who is an insured, is not entitled to coverage under PSI's policy with the Board.
 {¶ 16} Even assuming arguendo that the appellant is entitled to coverage, she is still precluded from coverage by another provision of the policy. Initially, we note that PSI first argues that the appellant is precluded from coverage because she did not provide it with prompt notice of her loss as required by the policy. However, a review of PSI's summary judgment motion discloses that PSI never asked the trial court to grant summary judgment on this issue. PSI's "failure to raise the matter in its motion for summary judgment precludes [it] from raising the issue on appeal." Ahern v. Ameritech Corp. (2000), 137 Ohio App.3d 754, 767, quoting Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220 (overruled on other grounds by Collins v. Sotka (1998), 81 Ohio St.3d 506). Thus, this Court will not address that issue.
 {¶ 17} PSI further argues that the appellant did not protect its subrogation rights denoted in the policy because she failed to advise PSI of her potential claim prior to the estate's settlement with the tortfeasor. In response to this argument, the appellant asserts that the subrogation provision of the policy does not apply in this case because the underinsured motorist coverage arose by operation of law rather than by mutual agreement of the parties to the contract of insurance. Thus, the appellant contends that part III of Scott-Pontzer, which held that exclusions in the written portion of an insurance contract do not apply to insurance coverage that arises by operation of law, prevents the subrogation provision from applying in the case sub judice. We disagree.
 {¶ 18} The policy at issue contains the following provision: "If any person or organization to of for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them. The Supreme Court of Ohio has held that such subrogation provisions are a condition precedent to the insurer's duty to provide underinsured motorist coverage. Bogan v. Progressive Cas. Ins.Co. (1988), 36 Ohio St.3d 22, paragraph four of the syllabus. The Court later modified its holding in Bogan, by determining that an insurer that received notice of a pending settlement and had a reasonable opportunity to protect its subrogation rights would not be able to use the subrogation clause to bar payment of underinsurance benefits. McDonaldv. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27, paragraph two of the syllabus. Scott-Pontzer states that any language in a policyrestricting insurance coverage would only apply to that portion of the policy "and not for purposes of underinsured motorist coverage."Scott-Pontzer, 85 Ohio St.3d at 666. However, a subrogation provision is not an exclusion. To the contrary, it is a condition, which is designed "to prevent insureds from extinguishing any right of subrogation" that the insurer may have against the tortfeasor. Bacon v. West American Ins.Co. (1996), 115 Ohio App.3d 433, 435. Thus, the holding of Scott-Pontzer
does not apply in this case because it prohibits only exclusions.
 {¶ 19} In the case sub judice, PSI was not notified of any claim against it by the appellant until receiving a letter from counsel for the appellant that was dated April 25, 2001. This letter was written nearly seven years after her brother's death and five years after Richard Oney's estate settled with the tortfeasor. Therefore, PSI never had a reasonable opportunity to protect its subrogation rights. Accordingly, the appellant was not entitled to coverage even if she was an "insured" under the policy with the county commissioners.
 {¶ 20} For these reasons, both assignments of error are overruled and the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.
Judgment affirmed.
 BRYANT and HADLEY, JJ., concur.